UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(Filed Electronically)

CRIMINAL ACTION NO.3:19-CR-139-RGJ
UNITED STATES OF AMERICA,                                                                  PLAINTIFF,

vs.

DAMEUS PARKS,                                                                                                        DEFENDANT.

## DEFENDANT'S MOTION FOR SENTENCE REDUCTION
## PURSUANT TO 18 U.S.C. §3582(c)(1)(A) AND USSG §1B1.13

Comes the Defendant, Dameus Parks (hereinafter "Dameus," or, in the alternative, "Defendant"), by counsel, and moves the Court pursuant to 18 U.S.C. §3582(c)(1)(A) and United States Sentencing Guideline §1B1.13[1] for a sentence reduction for the reasons set forth below. Defense counsel has conferred with the United States and the government has not yet determined its stance on this motion. The Defendant requests a hearing on this motion.

### I.     RELEVANT FACTS

**A. Procedural History and Sentence Imposed**

---

[1] The relevant guidelines cited in this motion will be effective November 1, 2023. Although they do not go into effect until that date, the Court may consider these guidelines prior to that time. *See U.S. v. McMillan,* 863 F.3d 1053, 1058 (8th Cir. 2017)("Although district courts are required to apply the guidelines in effect on the date of sentencing, they may consider pending amendments to the guidelines"); *U.S. v. Ruiz-Apolonio,* 657 F.3d 907, 917 (9th Cir. 2011)("A sentencing court, of course, has the discretion to grant a variance from the Guidelines after promulgation but before adoption of a proposed amendment"); *U.S. v. Lua-Guizar,* 856 F.3d 563, 567 (7th Cir. 2011)("the court could have considered the pending amendment"); *U.S. v. Miranda-Garcia,* 417 F. Appx. 895, 897 (11th Cir. 2011)(variance based on pending amendments to the U.S. Sentencing Guidelines is "discretionary"); and *U.S. v. Frierson,* 308 F.Appx. 298, 302-303(10th Cir. 2007)(defendant given downward departure of 15 months in light of pending amendment to Guidelines).

1

Dameus was originally charged with Possession of a Firearm by a Convicted Felon via Indictment on August 6, 2019 for possessing a firearm on July 1, 2019. DN 7. The basis for Dameus' felony status was a previous conviction in Jefferson Circuit Court for Enhanced Trafficking in Marijuana, less than 8 ounces. He was in a diversion program for that conviction at the time of the instant Indictment.

On December 3, 2019, the U.S. filed a superseding indictment, adding the charges of Discharge of a Firearm During and in Relation to a Drug Trafficking Crime for an incident on June 27, 2019 and Conspiracy to Distribute a Controlled Substance from the dates of June 20, 2019 through July 1, 2019. DN 20.

While, candidly, not a defense to the offense of Discharge of a Firearm During and in Relation to a Drug Trafficking Crime, Dameus had strong evidence supporting a self-defense claim. The parties openly discussed this issue and the potential for jury nullification if tried. As a result of these discussions, an agreement was reached to dismiss the 924(c) charge. In exchange for doing so, the parties agreed, pursuant to a C plea agreement, to 108 months on Counts 1 and 3 of the superseding Indictment.

With the 924(c) charge dismissed, Dameus' guideline range on Counts 1 and 3 were 46 to 57 months (offense level 21 and criminal history category III).

**B. Dameus' History and Characteristics**

Dameus was only 21 years old when he was sentenced. This offense was his first felony conviction. Before incurring these charges, Dameus had never spent more than a night in jail.

At the time of the instant offense, Dameus was a well-known local music artist with a large fan following. *See* photos attached as **Ex. A.** In fact, Dameus had just signed with a music label at the time of his arrest. *See* letter from Amber Powell, attached as **Ex. B**. Dameus still continues

to have support from the music industry. *See* letter from Time Music Group LLC, attached as **Ex. C.** As evidenced by the Time Music Group letter, the company will "ensure that he has the tools and resources he needs to get on his feet, stay out of negative environments and become the great musician he is destined to be." *Id.* Likewise, The Spot, a Goodwill program, will assist in helping Dameus with housing, job training, education or employment needs. *See* letter from Charlie Bell, program coordinator for The Spot, attached as **Ex. D.** Further, Dameus has a full-time employment opportunity with Immortal Media Group upon his release from custody. *See* letter from Matthew L. Curtis, attached as **Ex. E.**

While the instant offenses may have been the result of Dameus' attempts to live up to the image he created as a musical artist, based upon the attached character reference letters, Dameus was using his popularity to reach out to the youth of the community. *See* character letters, attached as **Ex. F.** His former teacher, Chemeka Kelly, who also spoke at Dameus' sentencing hearing, provides insight into Dameus from the time he was a child until young adulthood. Notably, she witnessed Dameus, using his popularity due to his musical influence, visit and volunteer at local and surrounding area schools. *Id.* Likewise, Chartrael Hall, Executive Director of the non-profit organization, Get Better Every Day (G.B.E.D.), who also spoke at Dameus' sentencing hearing, met Dameus through his organization in December 2018. G.B.E.D. is a mentorship program focused on spiritual, mental and emotional development. Dameus often spoke with the kids in the program to encourage them to stay in school and to make better decisions than he did. *Id.* Dameus also attended Mr. Hall's church and spoke during their Black History Month play. Dameus became more involved with bible study and often met with and spoke to Mr. Hall about being a better motivator for the youth. *Id.* In addition to his involvement with Mr. Hall's church, Dameus was

involved in True Believers in Christ Church. Dameus attended this church for many years. Dameus, while out of custody, spoke to at-risk youth through the church. *Id.* and see photo below.



Dameus also organized community events and helped with the homeless. *Id.,* letters from Warren Winburn and David Le.

Letters from his family and friends contain a common theme of loyalty, protectiveness, closeness to his family and inclusion of everyone, while those who know him professionally, remark on his hard work ethic. *See* character letters, attached as **Ex. G.** These letters show that not only is Dameus someone that is warm, caring and giving, but he has a great amount of potential and support. In short, the letters from the individuals that have known Dameus for many years, some even his whole life, present a picture of his character that is at odds with the crimes for which he has sentenced. As stated in the letters, by all accounts, Dameus' actions on which these criminal convictions are based, are out of character.

In addition to his letters of support, Dameus had several people speak at his sentencing hearing on December 8, 2020. As the Court will recall, Marissa Mitchell, a close friend of Dameus' testified first. She explained to the Court how Dameus had helped her physically, emotionally and financially and was one of her greatest motivators. *See* Transcript of Sentencing Hearing, DN 57 at p. 13, lines 1-17. As for the community, Marissa testified that Dameus spear-headed donation

meetups to provide gently worn clothing, shoes and winter wear items for homeless and less fortunate citizens in Louisville. *Id.* at p. 14, lines 1-8. Pastor Jason Reynolds, who is referenced above, also spoke. Although he is often asked to speak for defendants, Dameus was the first one that Pastor Reynolds agreed to speak for because he could speak the truth. *Id.* at p. 21, lines 2-8. Pastor Reynolds spoke to Dameus weekly while he was in pre-trial confinement and Dameus continued to want to give back to the community, expressing a desire to do so once he was released from custody. *Id.* at p. 22, lines 15-20. Pastor Reynolds, as well as, Chartrel Hall saw changes in Dameus while he was in custody. Both felt that his time helped Dameus to get away from negative influences, to "be still, to sit down" and to mature. *Id.* at p. 25, lines 5-14.

The Court seemingly agrees with these latter sentiments. As stated at the sentencing hearing, Dameus' incarceration was "a wake-up call that may have saved [his] life in someways." *Id.* at p. 40, lines 2-3. The Court further stated that it believed "that [Dameus] certainly ha[s] the capacity and the support system to do really amazing things." In closing, the Court told Dameus: "You have a lot of time to do great things, so use this time to prepare yourself in any way possible to make that happen, okay? I think you're going to be successful, I really do." *Id.* at p. 47, lines 1-5.

### C. Dameus' Time in Custody and Administrative Remedies

Dameus is currently housed at FCI Beckley. He has been in custody for these offenses since July 1, 2019. As of the date of the filing of this motion, he will have served 49 months. Notably, this is more than the low-end of the guideline range for the offenses of conviction. Assuming Dameus would receive good time credit, the amount of time served thus far exceeds the high-end of the guidelines (85% of 57 months is 48.45 months).

In December of 2022 Dameus made a request of the Warden of FCI Beckley, K. Heckard, to file a motion for modification of his term of imprisonment. This request was not honored. It has now been over 7 months since that request was made.

While in custody, Dameus has continued to actively participate in helping others. Dameus received his GED on September 30, 2021. *See* Certificate attached as **Ex. H.** Within months of receiving his GED, he became a GED tutor. Some of his work performance ratings are attached to this motion as **Ex. I.** As demonstrated by these evaluations, Dameus is considered a hard worker and has, at times, received a bonus for his efforts. *Id.* He has thus far tutored nine inmates. Four of the nine have been transferred to different facilities, but the five that have remained have taken their GED and passed. Attached as **Ex. J,** are the names of those individuals, as well as, a letter from one of those inmates, Tom Grant, outlining the efforts made by Damues in helping Tom get his GED and then to become a tutor, himself.

Dameus has also completed a 12 hour Drug Abuse Education Course and 20 hours of Getting Out! Pre-Release Prep. *See* Certificates attached as **Ex. K.**

The time in custody has taught Dameus several valuable lessons. As shown by Dameus' April 20, 2023 letter to the Court, he takes full responsibility for his actions that led to his incarceration and has taken to heart the Court's statements of belief in his ability to succeed. *See* letter, attached as **Ex. L.** He has found the positive in his sentencing and incarceration. On the date of his sentencing, he learned how much those around him cared and admired him; had it not been for that hearing, he would not have heard those things. *Id.* These sentiments have furthered his determination to do better and to make a difference when he gets out. The time in custody has taught him to slow down, analyze a situation before he reacts and to make good choices. *Id.* It is his lack of these abilities that led him to be incarcerated and he doesn't want to make that mistake

again. His incarceration has also taught him to cherish the little things in life, such as sunlight, talking to loved ones, good food and electronics. *Id.* All of these lessons have prepared Dameus for release and to be successful and positive once he is out of custody. *Id.*

## II. LEGAL STANDARD

18 U.S.C. §3582(c)(1)(A) provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>   (A) the court,…upon motion of the defendant…may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. §3582(c)(1)(A)(i) sets forth three requirements for a district court to grant compassionate release:

> First, "the court initially must 'find[ ]' that 'extraordinary and compelling reasons warrant such a reduction[.]'" *U.S. v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) (quoting 18 U.S.C. §3582(c)(1)(A)(i)). Second, "the court next must 'find[ ]' 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]'" *Id*. at 1005 (quoting 18 U.S.C. §3582(c)(1)(A)). Finally, "the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable[.]'" *Id.* (quoting 18 U.S.C. §3582(c)(1)(A)).

*U.S. v. Owens*, 996 F.3d 755, 759 (6th Cir. May 6, 2021).

USSG §1B1.13[2] provides the Court with the circumstances constituting extraordinary and compelling reasons. Important to the Court's decision here is sections (b)(5), (d) and (e) which states:

> OTHER REASONS—The defendant presents *any other circumstance or combination of circumstances that, when considered by themselves or together* with any of the reasons described in paragraphs (1) through (4), *are similar in gravity* to those described in paragraphs (1) through (4).
>
> REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, *rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances* in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.
>
> FORESEEABILITY OF EXTRAORDINARY AND COMPELLING REASONS—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, *the fact that an extraordinary and compelling reason could have been known or anticipated by the sentencing court does not preclude consideration for a reduction* under this policy statement. (emphasis added).

Although Dameus has grounds under the anticipated amendments to the guideline policy to file this motion, the Sixth Circuit has held that the second requirement under 18 U.S.C. §3582 is inapplicable in situations such as this where the inmate—as opposed to the Bureau of Prisons—files the compassionate release motion. *Owens* at 996 F.3d at 759 n. 2 (citing *U.S. v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and *U.S. v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). In short, a court considering a sentence reduction under §3582(c) may find a reason to be extraordinary and compelling enough to justify a sentence reduction even if it is not a reason that falls within the

---

[2] November 1, 2023 version.

Sentencing Commission's policy statement. "[T]he policy statement no longer binds district courts." *U.S. v. Price*, 496 F.Supp3d 83, 87 (D.C.D.C. 2020).

The new proposed policy statements of the guidelines demonstrate that the Court may consider a multitude of factors that were not previously recognized. Accordingly, "extraordinary and compelling reasons" warranting compassionate release are not limited to age, infirmity, or terminal illnesses, although these clearly qualify. Aside from the new policy statements, other reasons have been deemed sufficiently "extraordinary and compelling" to justify compassionate release. The Sixth Circuit' opinion in *U.S. v. Owens* cites with approval a compendium of cases identifying factors constituting "extraordinary and compelling reasons" justifying a sentence reduction under §3582(c)(1)(A). *Owens*, 996 F.3d at 761-763. A reviewing Court must consider all factors raised by a defendant and make "an individualized determination about whether extraordinary and compelling reasons merit compassionate release." *Owens*, 996 F.3d at 763.

> . . . Congress intended for § 3582(c)(1)(A) "to provide a 'safety valve' that allows for sentence reductions" to any defendant "when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020) (emphasis in original). And we know that Congress, by way of § 603(b) of the First Step Act, intended to increase the use of sentence reductions under § 3582(c)(1)(A).

*U.S. v. McGee*, 992 F.3d 1035, 1046 (10th Cir. 2021) (cited with approval, *Owens*, 996 F.3d at 761).

### III. ARGUMENT

Dameus meets the factors outlined in 18 U.S.C. §3582 to have his sentence reduced. Pursuant to this statute and based upon his qualifications, he is respectfully requesting the Court reduce his sentence to time served with 3 years of supervised release to follow.

#### A. Exhaustion of Administrative Remedies

Dameus has exhausted all administrative rights with the Bureau of Prisons ("BOP"). In December 2022, Daemus requested of the Warden at FCI Beckley to file a motion for compassionate release/sentence reduction, but this request was denied. It has been 30 days since that request. Accordingly, the first criteria of 18 U.S.C. §3582(c)(1)(A) has been met.

#### B. 18 U.S.C. §3553(a) Factors

The requested sentence modification is supported by the 3553(a) factors.

##### 1. Relevant Facts of the Offense for the Court to Consider

As to Count 3 of the indictment, Dameus had arranged to sell marijuana to three individuals in the Bowling Green area. On June 27, 2019, he drove to Bowling Green from Louisville to meet with those individuals. However, the three men planned to rob Dameus of the marijuana. PSR at ¶9. One of these individuals pulled a firearm on Dameus, who was meeting the men alone, causing him to shoot in self-defense. *Id.* When questioned at the hospital, the shooting victim was not cooperative. He advised officers that he could not remember what had happened and did not wish to speak to the police. *See* Crime Supplement narrative, attached as **Ex. M.** He then told officers that he was hit at random while walking to his vehicle. *Id.* The victim was dropped off at the hospital by other individuals who left "in a hurry"; hospital personnel had to record their license plate. *Id.* After grabbing a bite to eat, the other individuals came back to the hospital because "they started feeling bad." Their uncooperativeness with police and inconsistent, untruthful

statements support Dameus' claims that he shot in self-defense. That is, had these individuals not intended to rob Dameus, they would have had no reason to lie to the police or be less than forthcoming regarding the details of the shooting.

As to Count 1, Dameus was found with a handgun on July 1, 2019, just days after he acted in self-defense. *Id.* at ¶10. He was pulled over for speeding and a gun was found under the front passenger seat where a female passenger was sitting. *Id.* Marijuana and various paraphernalia were found in a backpack in the rear of vehicle.

While the discharge of a weapon is an aggravating factor when considering the seriousness of the offense, the use of that weapon in self-defense diminishes the degree of aggravation. Candidly, the involvement of firearms with the trafficking of weapons exacerbates the dangerousness of this crime. Dameus learned this lesson the hard way in June of 2019. But, the dangerousness involved in his actions was taken into account in his guideline calculations when he was given a 4 level enhancement for possessing the weapon and for directing the use of violence. *See* PSR at ¶25 and ¶26. Even with these enhancements, Damues' guidelines still came in far below the agreed upon sentence.

2. **Defendant's History and Characteristics**

Please see Dameus' history and characteristics outlined in Section IB above. As stated above, Dameus' actions leading to his convictions here are out of character for him. As proof, the character letters independently discuss how Dameus would visit and volunteer with schools, churches and non-profit organizations. He worked with the homeless and would talk to the youth and give presentations about changing their lives and doing the right thing. Likewise, the letters from his family and friends discuss how loyal, loving and including Dameus was to those around

him. As a professional, he had a strong work ethic and continues to show that work ethic while in prison through his tutoring.

His sentence of 108 months was the first felony conviction and incarceration for Dameus. Based upon Dameus' own words and letters from his family and friends, the time he has spent in custody thus far has been a life-changing experience. He has used this time to reflect on his crimes and to better himself in preparation for release.

Dameus' history and characteristics support a sentence of time served. His community outreach and involvement far outweighs those of most criminal defendants before this Court. He has tremendous family and community support that is also not often seen. This, coupled with employment opportunities now available to him, supports a lesser sentence. And, most importantly, his lack of experience in custody prior to this sentence, lends to a sentence of lesser time than 108 months.

### 3. The Need for the Sentence Imposed

Taking into account Dameus' history and characteristics, in combination with the facts of the offense, a time served sentence of 49 months of incarceration, followed by 3 years of supervised release, would (1) reflect the seriousness of the offense; (2) promote his respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; and (5) protect the public from further crimes of the Defendant. Each of these will be addressed below.

A time served sentence would reflect the seriousness of the offense because (1) Dameus' relevant conduct has elements of self-defense; (2) he has no criminal history of possessing weapons or committing crimes of violence; and (3) the offense conduct was inconsistent with his over-all character as set forth above.

The requested sentence would be just punishment for Dameus, would deter him and others charged with similar crimes from future criminal conduct, and would protect the public. Prior to the instant offense, Dameus has not spent a day in jail. A sentence of 49 months to an individual who has never served any time in prison in and of itself has a significant impact. Such a sentence, due to its severity with respect to this Defendant, would more than provide just punishment. Further, Dameus' experience in prison has been difficult. He has been subjected to frequent lockdowns, lack of access to communication with family and friends, and witnessed acts of violence not experienced before. This emotional stress of the prison sentence is additional punishment for his offenses.

As to protection of the public, upon release, Dameus will have 3 years of supervised release. The requirements and special conditions of supervised release will create a heightened environment of supervision that is not seen in state cases (where Dameus was previously on diversion). The structure of supervised release combined with the assistance from Time Music Group LLC and the Spot will provide Dameus with the tools to get back on his feet, stay out of trouble and be successful in his music career. In turn, this will keep him from committing new offenses and, thus, endangering the public.

**4.  The Need to Avoid Unwarranted Sentence Disparities Among Defendants.**

As discussed at Dameus' sentencing, the parties agreed to an upward variance as a result of plea negotiations to dismiss the 18 U.S.C. §924(c) charge. Without that offense, Dameus' guidelines came in at 46 to 57 months (offense level 21 and criminal history category III). According to the Judiciary Sentencing Information ("JSIN") data, in the last five fiscal years, 56 offenders were sentenced whose primary guideline was USSG §2K2.1, with a final Offense Level of 21 and a Criminal History Category of III. The average length of imprisonment imposed was

45 months and the median length of imprisonment was 46 months. Thus, if this Court were to sentence Dameus as requested, it would fall within the average and median prison sentences.

### C. Extraordinary and Compelling Reasons

Pursuant to USSG §1B1.13, Dameus has demonstrated extraordinary and compelling reasons to modify his sentence to time served. The combination of his rehabilitation and reasons known at sentencing support a finding by this Court of extraordinary and compelling reasons pursuant to USSG §1B1.13(b)(5),(d) and (e). As emphasized above, Dameus is a young, talented man with great potential and even greater family and community support. Included with this motion are 20 letters of support from his family, friends, community leaders and future employers. As evidenced by these letters, he is someone that previously contributed to his community and has the plans and means to do the same once released. Among the many things he did for his community, Dameus volunteered at schools around the area; helped with the homeless; organized community events; participated in the G.B.E.D. mentorship program; and spoke to at-risk youth about staying in school and making good decisions. Dameus' presence outside of custody, thus, would benefit society more than keeping him in custody. It should be noted that Dameus was 19 and 20 years old when making these contributions. Most people at that age do not take the time to engage in their community as Dameus did. It speaks volumes that he took the time at such a young age to do these things. While these were factors known to the Court at the time of Dameus' sentencing on his C plea, they may still be considered when determining a sentence reduction under USSG §1B1.13(e).

Dameus has taken it upon himself to not only get his GED while in custody, but to become a tutor to others. He has helped upwards of 9 individuals, more than half of which, to his knowledge, have gotten their GED thanks to his help. In addition to his time spent tutoring,

Dameus has taken drug treatment and other courses to prepare himself for release. Further, Dameus' rehabilitation started before he was sent to FCI Beckley, while he was in pre-trial custody. As evidenced by the letter from Pastor Jason Reynolds, while in Grayson County, Dameus did bible study and prayer with Pastor Reynolds every week. He told Pastor Reynolds that he wanted to get rid of any music that doesn't honor God and Pastor Reynolds saw Dameus have a change of heart. And, his rehabilitation extends beyond his actions in custody. He has also taken steps to ensure that once he is released that he will have a job waiting for him and resources to help him get on his feet. He has a job waiting for him at Immortal Media Group and, if needed, job training through the Spot or a position with RayBurn 1 through Goodwill. Both the Spot and Time Music Group, LLC have pledged their help in providing tools and resources for Dameus to help him acclimate once he is released. Dameus' actions in custody and the steps he has taken to better himself when released, all support the rehabilitative effect prison has had on him. Pursuant to USSG §1B1.13(d), this Court may consider Dameus' rehabilitation while serving in combination with other circumstances in determining whether and to what extent to reduce his sentence.

In sum, 108 months incarceration is too great of a sentence when considering the contributions made by Dameus, his age, his potential, and his family and community support. A reduction of this sentence under 18 U.S.C. §3582 is not only proper, but warranted. WHEREFORE, for the extraordinary and compelling reasons set forth above, the Court should reduce defendant's sentence to time served with 3 years to follow pursuant to 18 U.S.C. §3582(c)(1)(A).

/s/ Chastity R. Beyl
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

**CERTIFICATE**

I hereby certify that on July 31, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Amy Sullican, Assistant United States Attorney.

/s/ Chastity R. Beyl